REC'D NOV 2

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bastazar Feliciano,<br>Plaintiff, | ) <br> ) <br> ) <br> ) | |
| -vs- | ) <br> ) <br> ) | JURY TRIAL DEMANDED |
| Judge Margaret Theresa Murphy of the<br>Family Court of<br>Philadelphia County, in her official and<br>Individual capacities; Supervisory Officer<br>OIC – Child Support Enforcement,<br>Philadelphia County,<br>In his official and<br>Individual Capacity; and against the OIC,<br>Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL RIGHTS COMPLAINT |

## COMPLAINT

Plaintiff Bastazar Feliciano, as and for his complaint against defendants Judge Margaret Theresa Murphy, and the Supervisory Officer of the Pennsylvania Department of Social Services, Philadelphia County, and the Department of Social Services, under the penalties of perjury hereby avers and says:

## INTRODUCTION

1. This is a complaint pursuant to Sections 1988 and 1983 of Title 42 of the United States Code, as well as the Fourth and Fourteenth Amendments of the United States Constitution, in addition to the constitution of the Commonwealth of Pennsylvania, against Judge Margaret Theresa Murphy, of the Family Court of Philadelphia; against the Supervisory Officer of the OIC, department of Social Services for Philadelphia County, in his or her official and individual capacities; and against the Department itself.

2. Pursuant to his divorce, plaintiff Bastazar Feliciano was charged with the sole responsibility for his children. However, his ex-wife, Ms. Jessica Rosario brought a child support enforcement action against him despite knowing that he was the only source of support for his children.

3. Despite the weight of the evidence, which

showed that the plaintiff had herein was indeed to sole and solitary support for his children an order was entered finding plaintiff responsible for $856.46 monthly, to which arrearage was added. See exhibit 1.

4.   While this what the OIC does, in this case, their erstwhile but in-this-case misplaced diligence resulted in a miscarriage of justice. Over his several court appearances plaintiff has steadfastly maintained that he is the solitary pillar of support for his children and that the record would bear this out.

5.   However, in finding the plaintiff liable for a large amount of child support against the weight of the evidence, plaintiff was condemned to incarceration and involuntary slavery, in violation of the 8th Amendment to the Constitution, et al. Moreover, pursuant to this illegal and denying-of-due-process decision, Plaintiff has been damaged in the amount of $2,750,000.00, United States Simoleons.

6.   A policy decision made that results in the issuance of a conclusory and unjustly calculated support amount is clearly unconstitutional, as is its enforcement. The issuance of the order placed the plaintiff in an untenable situation; ensured that the Hobson's Choice he was given resulted in his incarceration and an involuntary taking. Furthermore, the policy resulting in this taking resulted in a government agency stepping out of the guidelines so clearly established by case, black letter and most importantly, Constitutional law, federal and Commonwealth and co-opted a judge into helping.

7.   Moreover, Plaintiff suffered both incarceration, for which he filed a Habeas Corpus (please see, Exhibit 2) and a downgrading of his credit score as a result of the unjust taking of his liberty and financial position. If the Court had taken the time to examine the facts Plaintiff put forth – that the Plaintiff already supported his children, and that the amount of child support paid was not going to benefit them, it would have ruled differently. Courts are bound to consider all evidence. However, this Court accepted the allegations of the ex-wife and Department of Social Services without examination, failed to accord defendant due process, and peremptorily ruled against him to his great, vast, extreme detriment.

## JURISDICTION AND SCOPE

Title 42 of the U.S. Code is part of the CIVIL RIGHTS ACT of 1871. This provision was formerly enacted as part of the Ku Klux Klan act of 1871 and was originally designed to combat post-Civil War racial violence in the Southern states. Reenacted as part of the Civil Rights Act, section 1983 is as of

now the primary means of enforcing all constitutional rights, a d plaintiff wishes to ask the Court to do just that, as the criminal court, for all its safeguards, failed to.

8. Section 1983 of Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any Stat e or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the U nited States or other person within the jurisdiction thereof to the deprivation of any rights, privile ges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an a ction at law, suit in equity, or other proper proceeding for redress.

On March 23, 1871, PresidentULYSSES S. GRANT sent an urgent message to Congress calling for n ational legislation that could combat the alarming increase in racial unrest and violence in the

south. Congress reacted swiftly to this request, proposing a bill just five days later. The primary o bjective of the bill was to provide a means for individuals and states to enforce, in the federal or st ate courts, the provisions of the Fourteenth Amendment.

During the first 90 years of the act, few causes of action were brought due to the narrow and restrictive w ay that the U.S. Supreme Court interpreted the act. For example, the phrase "person ... [acting] under colo r of any statute" was not interpreted to include those wrongdoers who happened to be state or municipal o fficials acting within the scope of their employment but not in accordance with the state or municipal law Those officials were successfully able to argue that they were not acting under color of statute and therefo re their actions did not fall under the mandates of section 1983. In addition, courts narrowly construed the definition of "rights, privileges, or immunities."

But the Supreme Court decisions in *Monroe v. Pape,* 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961), and *Monell v. Department of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978),   fi nally recognized the full scope of Congress's original intent

in enacting section 1983. The Supreme Court began accepting an expansive definition of rights,   privileges, or immunities and held that the act does cover the actions of state and municipal officials, even if they had no authority under state statute to act as they did in violating someone's federal rights.

Federal courts are authorized to hear cases brought under section 1983 pursuant to two statutory provisions: 28 U.S.C.A. § 1343(3) (1948) and 28 U.S.C.A. § 1331 (1948). The former statute permits federal district courts to hear cases involving the deprivation of civil rights, and the latter statute permits federal courts to hear all cases involving a federal question or issue. Cases brought under section 1983 may therefore be heard in federal courts by application of both jurisdictional statutes.

9.    As such, this honorable court is vested with both subject matter and general jurisdiction, and is thereby empowered to hear and redress the wrongs committed herein. Plaintiff respectfully requests injunctive relief and monetary damages. He avers that the wrongs done to him by agents of the above-referenced agencies, pursuant to the polices, customs and procedures of those agencies, damaged him in an amount no less than $2,700,500. He also prays for injunctive relief, and respectfully requests that this honorable court issue a injunction against this behavior.

WHEREFORE, plaintiff Bastazar Feliciano respectfully requests that this honorable court:

a.    set this matter down for jury trial;

b.    Void the illegal and unconstitutional support order;

c.    Void the warrant of arrest;

d.    Appoint counsel if this Honorable Court, in its estimable judgment, believes such counsel to be required constitutionally;

e.    Enter judgment for the above referenced amount, against the defendants, jointly and severally;

f.    Issue an injunction interdicting such behavior in the future;

g.    And for whatever other and further relief that this Honorable Court finds to be just, right meet and condign.

_____
Bastázar Feliciano, plaintiff